## Ludwick *versus* The Commonwealth.

1. Occasional acts of drunkenness will not constitute the person an habitual drunkard, but it is not necessary that he should constantly be in an intoxicated state: *a fixed habit of drunkenness* will constitute a person an habitual drunkard.

2. If a person be found by an inquest to be an habitual drunkard, it is not necessary for them to find that he is incapable of managing his estate; such incapacity is a conclusion of law. The Act of 13th June, 1836, relating to lunatics and habitual drunkards, is precautionary in its design; a disposition of mind or body which might lead to the waste of an estate, is sufficient to justify the enforcement of its provisions.

ERROR to the Common Pleas of *Westmoreland county*, in the matter of Samuel Ludwick.

Upon a commission issued from the said Court, Samuel Ludwick had been found to be an habitual drunkard. Such finding was traversed by him when the inquisition came up for confirmation.

On the trial, it was proved that the defendant very frequently got drunk, but there was little or no evidence to show that he had ever squandered or wasted his estate. The question mostly discussed was, whether the jury ought not to be satisfied that the defendant, by reason of habitual drunkenness, was incapable of taking care of his person, and of managing his estate.

On the part of Ludwick, points were submitted as follows:

1. That if the jury believe that Samuel Ludwick was not constantly and habitually in the custom of drinking intoxicating

[*Ludwick v. The Commonwealth*]

liquors, then he is not an habitual drunkard, although he may be proved to have got drunk at times, and then at other times refrained and kept sober.

2. That although the jury may believe that Samuel Ludwick is in the habit of getting drunk, yet if they believe that he is still able to take care of himself and manage his estate, he is not an habitual drunkard.

KNOX, J., after directing the attention of the jury to the evidence, charged, in answer to defendant's first point, that occasional acts of intoxication did not constitute one an habitual drunkard. Neither was it necessary to make out the case, that a person should be constantly in an intoxicated state; that a man might be an habitual drunkard, and yet be sober at times for days and weeks together. That the question was, had the traverser a fixed habit of drunkenness? Was he habituated to intoxication whenever the opportunity offered? The question is one of fact for the jury to find, but the Court have no hesitation in saying that the man who is intoxicated or drunk the one-half of the time, should be pronounced an habitual drunkard.

In answer to the second point, the jurors were instructed, that if they found the traverser to have been, at the date of the inquisition, an habitual drunkard, it was unnecessary for them to decide whether he was capable or incapable of managing his estate, as his incapacity in that event was a conclusion of law. That the evidence of the manner in which he conducted his business, was only important as it tended to prove or disprove his habits as to drinking or otherwise.

Error was assigned to the answers to the points submitted.

*Cowan* and *Foster*, for the plaintiff in error.—The term *habitual* is somewhat loose in its general acceptation, but a *habit* has been defined to be a state or disposition of the mind "formed by repeated impressions, rendered permanent by continued causes." The question then is, what is the standard to which the habit of drunkenness may be referred? Is it constant intoxication; or if it be occasional only, what shall be the occasions as to frequency and effect? These questions should be settled, and not left as a question of fact to a jury, because juries may differ on the subject.

2. In a proceeding against one alleged to be a lunatic, if the delusion be once established, it is necessary to go further, and inquire whether that delusion be such as disqualifies the lunatic from managing his estate, taking care of himself, and performing his duties to his relatives and society. But in the present case, there being no permanent derangement of mind shown to exist, the *habit of drunkenness*, which the law makes

[Ludwick *v.* The Commonwealth.]

equivalent thereto, ought not only to be well made out by some known and certain rule, but the jury ought to have been instructed to inquire further, and determine whether that habit disqualified the drunkard from taking care of himself, managing his estate, and from performing his duties to his family and society, for it by no means follows, as the Court decided, that these are inferred by the law from the habit of drunkenness: 6 *W. & Ser.* 451, McElroy's case.

*W. A. Cook,* contrà.—The evidence was that Ludwick acted with indifference and recklessness concerning his estate.

2. A habit has been defined to be "an acquired disposition, or the aptitude for repeating certain acts, or a facility which arises from the repetition of the same act." An habitual drunkard is one who by repeated use of intoxicating drinks has acquired a taste for them which demands, not an occasional, nor yet an unintermitted, but a *frequent* use of them, so that he is necessarily often in a state of drunkenness. The question is, therefore, one relating to a condition of mind or body. Hence there cannot be any uniform standard to which the habit of drunkenness may be referred, for whether an individual is "an habitual-drunkard" depends to a great extent on the peculiarities of his constitution.

3. A distinction exists between lunatics and habitual drunkards. *Mental* disorder may occur and yet it may not render its subject incapable of managing his person and estate. But habitual drunkenness is equivalent to that form of lunacy which operates to the destruction of all ability for business. Being regarded as lunatics, their inability is an inference from their habitual drunkenness: 6 *W. & Ser.* 451, McElroy's case; 7 *Id.* 244–5, Sill *v.* McNight. The Act of Assembly, in case of a *lunatic,* requires the inquest to determine whether he has *lucid intervals ;* as to the other case, the act limits the inquiry to the question whether he is "an habitual drunkard."

Proceedings may be instituted under the Act of Assembly against an habitual drunkard *who has not any estate:* Act of 1836, s. 8.

The opinion of the Court was delivered, Oct. 27, by

Rogers, J.—To constitute an habitual drunkard, it is not necessary that a man should be always drunk. It is impossible to lay down any fixed rule as to when a man shall be deemed an habitual drunkard. It must depend upon the decision of the jury, under the direction of the Court. It may, however, be safely said, that to bring a man within the meaning of the Act, it is not necessary he should be always drunk. Occasional acts of drunkenness, as the Judge says, do not make one an habitual drunkard. Nor is it necessary he should be continually in an intoxicated

[Ludwick *v.* The Commonwealth.]

state. A man may be an habitual drunkard, and yet be sober for days and weeks together. The only rule is, has he a fixed habit of drunkenness? Was he habituated to intemperance whenever the opportunity offered? We agree that a man who is intoxicated or drunk one-half his time is an habitual drunkard, and should be pronounced such.

We also concur with the Court that if the jury found the tra-verser to have been, at the date of the inquisition, an habitual drunkard, it was unnecessary to decide whether he was capable or incapable of managing his estate. His incapacity in that event is a conclusion of law. It is not necessary to say it is a *presumptio juris de jure*, but, at least, it throws the burden of proof of capacity on the traversers. Indeed, it may be well doubted whether his management or mismanagement of his estate is a matter of inquiry. It is very certain, under the Act of the 13th June, 1836, proceedings may be instituted against an habitual drunkard who has no estate. But this cannot be, if mismanagement of it be necessary. It is well said, if there must be evidence of squandering property to support a proceeding to declare an individual an habitual drunkard, the object of the act in many cases would be defeated. For it is precautionary in its design, and hence a disposition of mind or body which might lead to the wasting of an estate, is sufficient to justify the enforcement of its provisions: Sill *v.* McNight, 7 *W. & Ser.* 245. It is indeed impossible that a man can be an habitual drunkard without waste or mismanagement, as the very act of drunkenness is itself waste. In this case, even if required, the evidence was full and plenary to this point.

The Act contemplates not only the welfare of the unfortunate inebriate, but the safety and comfort of his wife and children.

Judgment affirmed.